# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MATTHEW PATERNOSTER,   : Civ. A. No. 07-1200 (NLH)(AMD)
           :
   Plaintiff,   :
           :
   v.       : **OPINION**
           :
ECCO USA INC.,      :
           :
   Defendant.   :
           :

**APPEARANCES:**

Ari R. Karpf, Esquire
Jeremy M. Cerutti, Esquire
Karpf, Karpf & Virant, Esqs.
Neshaminy Plaza
3070 Bristol Pike
Building 1, Suite 102
Bensalem, PA 19020

  *Attorneys for plaintiff*

David E. Maitlin, Esquire
Sachs Maitlin Fleming & Greene
80 Main Street
Suite 310
West Orange, NJ 07052

Denise I. Murphy, Esquire (*pro hac vice*)
Rubin and Rudman LLP
50 Rowes Wharf, 3d Floor
Boston, MA 02110

  *Attorneys for defendant*

**HILLMAN**, District Judge

  This matter has come before the Court on defendant's motion
for summary judgment on plaintiff's claims of employment
discrimination because of his disability.  For the reasons
expressed below, defendant's motion will be granted.

## BACKGROUND

From August 16, 2006 through January 31, 2007, plaintiff, Matthew Paternoster, was employed by defendant, ECCO USA, Inc., as a shoe sales associate at defendant's store in Atlantic City, New Jersey.  Plaintiff claims that on the same day he requested leave for his disability--anxiety and depression--he was terminated.  Plaintiff claims that defendant violated New Jersey's Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 et seq., by wrongfully terminating him because of his disability and by refusing to provide him with reasonable accommodations. Defendant denies these claims, and has filed its instant motion for summary judgment.  Defendant counters that it was not aware that plaintiff was requesting leave for his disability, but rather for "personal reasons."  Correspondingly, defendant contends that it terminated plaintiff's employment because an "unsavory character" entered the store on two occasions looking for plaintiff, and this "character" threatened the safety of plaintiff's co-workers and customers.  Defendant also argues that plaintiff's admitted heroin use does not classify as a disability.  Plaintiff opposes defendant's motion.

## DISCUSSION

### A.  Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship

2

between the parties and the amount in controversy exceeds
$75,000.

   **B.   Summary Judgment Standard**

   Summary judgment is appropriate where the Court is satisfied
that "the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ.
P. 56(c).

   An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit.  Id.  In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."  Marino
v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.
2004)(quoting Anderson, 477 U.S. at 255).

   Initially, the moving party has the burden of demonstrating
the absence of a genuine issue of material fact.  Celotex Corp.

3

v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.  Analysis**

In its motion, defendant argues that plaintiff cannot establish a *prima facie* case of discriminatory discharge or failure to accommodate under the NJLAD.  Further, defendant argues that plaintiff cannot prove that his purported disability was the reason he was terminated.  In his opposition, plaintiff argues that evidence on the record establishes his *prima facie* case for each claim, and genuine issues of material fact exist as to causation.

**1.   Plaintiff's wrongful discharge claim**

In a discriminatory discharge case brought under the NJLAD[1]

_____

[1]The NJLAD provides,

All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of

based on an employee's disabled status, the employee must carry
the initial burden of establishing a *prima facie* case of
discrimination.  <u>Svarnas v. AT & T Communications</u>, 740 A.2d 662,
670 (N.J. Super. Ct. App. Div. 1999).  To establish a *prima facie*
case of discriminatory discharge under the NJLAD, the employee
must prove (1) that he was disabled, (2) that he was otherwise
qualified to perform the essential functions of the job, with or
without the accommodation by the employer, and was performing at
a level that met the employer's expectations, (3) that he
nevertheless was fired, and (4) that the employer sought someone
to perform the same work after he left.  <u>Id.</u>

     Defendant argues that although plaintiff can prove the third
element, he cannot prove the other three factors of his *prima
facie* case.  Defendant argues that plaintiff's heroin use during
his employment does not classify him as disabled,[2] he was not

        public accommodation, publicly assisted housing
        accommodation, and other real property without
        discrimination because of race, creed, color, national
        origin, ancestry, age, marital status, affectional or
        sexual orientation, familial status, disability,
        nationality, sex, gender identity or expression or
        source of lawful income used for rental or mortgage
        payments, subject only to conditions and limitations
        applicable alike to all persons.  This opportunity is
        recognized as and declared to be a civil right.

N.J. Stat. Ann. 10:5-4.

    [2]In arguing that plaintiff does not meet the first element
of his *prima facie* case, defendant commingles its argument
concerning its legitimate reasons for termination.  Later in its
brief, defendant contends that heroin use is not a disability and

5

performing his job properly because "creating an unreasonable risk of harm to co-workers and customers was not acceptable to ECCO, and anyone who presented that risk was not meeting ECCO's performance expectations," and he was not replaced after he left, but rather his job duties were spread out among the remaining employees.

Plaintiff counters that defendant does not refute that plaintiff suffers from anxiety and depression, and that those conditions are considered disabilities under the NJLAD.[3]  He further argues that he was never disciplined by ECCO, he performed his duties "above-average," and ECCO hired someone to replace him.

In response, defendant presents evidence that plaintiff had been reprimanded in the past.  Defendant also argues that plaintiff's evidence that he was replaced is without merit, as it was provided by a low-level human resources administrative employee who did not have first-hand knowledge on this issue, and it is refuted by an employee of the store who testified that plaintiff was not replaced.

---

an employer is not required to make accommodations for a drug user.  The Court parses out these arguments and considers them in their appropriate place within the burden-shifting analysis.

[3]See Domurat v. Ciba Specialty Chemicals Corp., 801 A.2d 423, 433 (N.J. Super. Ct. App. Div. 2002) ("We have little doubt that ADD and depression, like alcoholism and other psychiatric disorders, qualifies as a 'handicap' under the LAD.").

The burden of establishing a *prima facie* case under the NJLAD is low,[4] and even if defendant's arguments were accepted, defendant does not sufficiently discredit plaintiff's claim that he is disabled because of his anxiety and depression.  Thus, despite the disputed issues concerning all of the elements, plaintiff has met his "rather modest" burden of demonstrating that his "factual scenario is compatible with discriminatory intent-i.e., that discrimination could be a reason for the employer's action."  Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1139 (N.J. 2005) (citation and quotations omitted).

Meeting this low threshold for a prima facie case, however, does not end the inquiry.  "What makes an employer's personnel action unlawful is the employer's intent."  Id. at 1138.  To prove this intent, where there is no direct evidence of discrimination as is typical in most cases, New Jersey has adopted the procedural burden-shifting methodology articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-05 (1974).  Id. at 1139.  Under this framework, should a plaintiff establish a *prime facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to

---

[4]Bispo v. McKesson Information Solutions, Corp., 2005 WL 2364804, 6 (N.J. Super. App. Div. 2005) (quoting at length Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1139 (N.J. 2005)) ("[The New Jersey] Supreme Court has recently reiterated the relatively low threshold required for a plaintiff to establish a *prima facie* case [under the NJLAD].").

articulate some legitimate, nondiscriminatory reason for its
actions.  "The employer satisfies its burden of production by
introducing evidence which, taken as true, would permit the
conclusion that there was a nondiscriminatory reason for the
unfavorable employment decision." Fuentes v. Perskie, 32 F.3d
759, 763 (3d Cir. 1994).  This is a light burden.  Id.

Once the employer has established its nondiscriminatory
reason for termination, the burden of production shifts back to
the employee to prove by a preponderance of the evidence that the
reason articulated by the employer was merely a pretext for
discrimination and not the true reason for the employment
decision.  Zive, 867 A.2d at 1140 (citation omitted).  To prove
pretext, a plaintiff may not simply show that the employer's
reason was false but must also demonstrate that the employer was
motivated by discriminatory intent.  Id.  That burden merges with
the plaintiff's ultimate burden of persuading the court that she
or he was subjected to intentional discrimination, but the burden
of proof of discrimination does not shift; it remains with the
employee at all times.  Id.

Defendant here has articulated a non-discriminatory reason
for discharge: a menacing person came into the store on two
occasions looking for plaintiff, and when he did not find
plaintiff there, he became loud, profane and threatening, so much
so that plaintiff's co-workers were frightened and the police

8

were called.  Human resources was informed about these incidents
on the day of the second incident through the store manager's
phone call to HR inquiring about plaintiff's request to take time
off because, in plaintiff's words, "some not nice people were
after him."  The head of HR determined that plaintiff was not
entitled to vacation time, and considering all the facts at her
disposal, "ECCO did not have to retain the services of an at-will
employee, when that employee presented a risk of harm to ECCO's
employees, clients, and business."  (Erickson Aff. ¶ 5.)
Defendant argues that at no time was HR made aware that plaintiff
suffered from depression and anxiety, and on the day he requested
leave and was ultimately fired, HR was not informed that
plaintiff had requested leave for that disability.

     In an attempt to prove that disputed facts exist as to the
validity of defendant's proffered reason for termination,
plaintiff contends that on the day he was fired, HR was
specifically told by his manager that he was requesting
disability leave.  Additionally, plaintiff argues that his fellow
employees testified that they were not afraid of the person who
came twice looking for plaintiff.  Thus, because disputed facts
exist as to whether HR knew of his request for disability leave,
and there is evidence that the "unsavory character" justification
was simply a pretextual excuse, it is clear that at a minimum
disputed facts exist that preclude summary judgment in

9

defendant's favor.

The Court finds that, even accepting all inferences in his favor, plaintiff cannot meet his ultimate burden of proving that he was subjected to intentional discrimination.  First, although plaintiff categorizes his manager's phone call with HR as concretely informing them of his request to take leave for his depression and anxiety, the deposition of plaintiff's manager is not so definitive.  Plaintiff's manager testified that even though he is pretty sure he would have conveyed plaintiff's request as precisely as plaintiff articulated it to him, he could not recall whether he explicitly told HR that plaintiff's request was for medical reasons or simply for personal issues.  Thus, even if plaintiff's manager's testimony were to be solely credited, it does not singularly support his case.  Additionally, the decision-makers at ECCO affirm, and plaintiff has not refuted, that plaintiff's manager did not inform them that plaintiff's request was related to any medical condition or disability, and they did not otherwise know that plaintiff suffered from depression and anxiety.

Second, although plaintiff points to evidence that one of his co-workers was not afraid of the "unsavory character," and plaintiff's manager did not believe that the unsavory character's visits to the store warranted termination, plaintiff has not refuted that in making its decision to fire him, defendant

10

considered that the police had to be called, that his visitor undisputably was profane and created a disturbance, and that it was because of plaintiff that ECCO's business had been disrupted and its employees and customers possibly threatened by this person.

Third, even though plaintiff was terminated on the very day he purportedly requested disability leave, it does not automatically evidence defendant's wrongful conduct.[5]  It was also the same day that a threatening person disrupted the ECCO store, its employees and customers.

Overall, plaintiff has failed to submit evidence that casts sufficient doubt upon defendant's "proffered legitimate reason so that a factfinder could reasonably conclude it was fabricated," or "that allows the factfinder to infer that discrimination was

---

[5]Temporal proximity is a factor usually considered in the context of a retaliatory discharge claim where causation is an element of a plaintiff's *prima facie* case, rather than in a wrongful discharge claim, where proving causation to establish a *prima facie* case is not required.  In the retaliatory discharge context, "the mere fact that an adverse employment action occurs after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)).  However, if the timing of the alleged retaliatory action is "unusually suggestive of retaliatory motive" a causal link will be inferred. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).  Here, although plaintiff was terminated on the same day he claims he asked for NJLAD-protected disability leave, in considering plaintiff's evidence to support his burden of proving defendant's discriminatory intent, other factors outweigh the temporal proximity of his discharge.

11

more likely than not the motivating or determinative cause of the termination decision." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). The record reveals that on January 31, 2007, plaintiff was again visited by an "unsavory character" at the ECCO store. Plaintiff was concerned about this person, and that day asked his manager for time off for personal or medical reasons. When HR was informed about plaintiff's request in connection with the unsavory character's visits, and considering the police had been called, HR determined that plaintiff, an at-will employee, created a risk of harm to ECCO's employees, clients and business,[6] and therefore terminated his employment. Simply put, even if defendant knew that plaintiff suffered from depression and anxiety, and even if defendant knew plaintiff asked for disability leave in connection with his disability that day, plaintiff has provided no evidence that the risk of harm to defendant's employees, customers and business was not the motivating factor for his termination. The fact that plaintiff suffers from a disability does not prevent his employer from terminating him for other reasons.[7] Accordingly, because

---

[6]Indeed, according to defendant, plaintiff left a voicemail message for the head of HR, stating that he understood why they were concerned about safety and apologized for placing his co-workers in danger.

[7]See, e.g., Beck v. Tribert,711 A.2d 951, 958 (N.J. Super. Ct. App. Div. 1998) (quoting Velantzas v. Colgate-Palmolive Co., Inc., 536 A.2d 237 (N.J. 1988)) ("It is undisputed that plaintiff was an at-will employee who could be fired by defendants 'for no

plaintiff has failed to demonstrate weaknesses, implausibilities, inconsistencies, or contradictions in defendant's proffered reason such that a rational factfinder could find that plaintiff's disability was the true motivating factor for termination, <u>Fuentes</u>, 32 F.3d at 765, summary judgment must be entered in favor of defendant on plaintiff's wrongful termination claim.

### 2. Plaintiff's failure to accommodate claim

Under the NJLAD, an employer must make a reasonable accommodation to the limitations of an employee who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business. <u>Soules v. Mount Holiness Mem'l Park</u>, 808 A.2d 863, 867 (N.J. Super. Ct. App. Div. 2002). To prove a failure to accommodate claim under the NJLAD, a plaintiff must prove (1) he was disabled, (2) was qualified to perform the essential functions of the job, with or without accommodation, and (3) suffered an adverse employment action because of the disability. <u>Dicino v. Aetna U.S. Healthcare</u>, 2003 WL 21501818, 12 (D.N.J. 2003) (citing <u>Bosshard v. Hackensack Univ. Med. Ctr.</u>, 783 A.2d 731 (N.J. Super. Ct. App. Div. 2001) (other citation omitted). Because the Court has already determined that plaintiff cannot establish that he was terminated because of his disability, he

---

specific reason or simply [for] bothering the boss.'").

13

cannot prove that defendant failed to accommodate his disability. Consequently, defendant is entitled to summary judgment on this claim as well.

### CONCLUSION

For the reasons expressed above, defendant's motion for summary judgment will be granted.  An appropriate Order will be entered.


Date: <u>March 11, 2010</u>                    <u>  s/Noel L. Hillman         </u>

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

14